IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01:23-cv-_____-___-___

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

LANDRY'S, LLC d/b/a LANDRY'S INC., LANDRY'S MANAGEMENT, L.P., and LANDRY'S SEAFOOD HOUSE – COLORADO, INC. d/b/a SALTGRASS CO, INC. f/k/a LANDRY'S SEAFOOD HOUSE,

    Defendants.

**COMPLAINT AND JURY DEMAND**

**NATURE OF THE ACTION**

    This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful employment practices on the basis of national origin, to correct unlawful retaliation, and to provide appropriate relief to Shadi Torabi, who was adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges Landry's, LLC d/b/a/ Landry's Inc., Landry's Management, L.P., and Landry's Seafood House – Colorado, Inc. d/b/a Saltgrass CO, Inc. f/k/a Landry's Seafood House violated Title VII by subjecting Torabi to a hostile work environment based on her Iranian nationality, treating her differently than non-Iranian employees, failing to sufficiently address her complaints of harassment and discrimination, and retaliating against her for engaging in protected activity.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of Title I, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

### Plaintiff EEOC

4. The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

### Defendant Landry's, LLC

5. Landry's, LLC d/b/a/ Landry's Inc. ("Landry's, LLC") is a Delaware corporation with its principal place of business at 1510 W. Loop South, Houston, Texas 77027.

6. Landry's, LLC is wholly owned by Fertitta Entertainment, Inc. ("Fertitta").

7. At all relevant times, Landry's, LLC has been continuously doing business in the State of Colorado.

8. At all relevant times, Landry's, LLC has had at least 15 employees.

9. At all relevant times, Landry's, LLC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**Defendant Landry's Management**

10. Landry's Management, L.P. ("Landry's Management") is a Delaware limited partnership with its principal place of business at 1510 W. Loop South, Houston, Texas 77027.

11. Landry's Management is part of the Landry's, LLC organization and is ultimately owned by Fertitta.

12. At all relevant times, Landry's Management has been continuously doing business in the State of Colorado.

13. At all relevant times, Landry's Management has had at least 15 employees.

14. At all relevant times, Landry's Management has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**Defendant Landry's Seafood House**

15. Landry's Seafood House – Colorado, Inc. d/b/a Saltgrass CO, Inc. f/k/a Landry's Seafood House ("Landry's Seafood House") is a privately held Colorado corporation with its principal place of business at 1510 W. Loop South, Houston, Texas 77027.

16. Landry's Seafood House is part of the Landry's, LLC organization and is ultimately owned by Fertitta.

17. At all relevant times, Landry's Seafood House has continuously been doing business in the State of Colorado.

18. At all relevant times, Landry's Seafood House has continuously had at least 15 employees.

19. At all relevant times, Landry's Seafood House has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**Defendants Comprise a Single Employer/Integrated Enterprise**

20. At all relevant times, Defendants Landry's, LLC, Landry's Management, and Landry's Seafood House (collectively "Defendants") comprised a single employer/integrated enterprise.

21. Defendants share common ownership because Landry's Management and Landry's Seafood House are subsidiaries of Landry's LLC and all three defendants are ultimately owned by Fertitta.

22. Defendants also have interrelated operations, common management, and centralized control of labor operations.

23. Landry's, LLC, the parent company of Landry's Management and Landry's Seafood House, has ultimate control over the operation of all Landry's Seafood House restaurants, including the restaurant in this case.

24. Landry's, LLC also maintains nationwide point-of-sale, quality control, and payroll systems for all Landry's Seafood House restaurants.

25. Landry's Management, a subsidiary of Landry's, LLC, provides both administrative and management services to Landry's Seafood House restaurants nationwide, including restaurants in Colorado.

26. The services provided by Landry's Management to restaurants within the Landry's enterprise include: human resources, employee relations, handling of employee

4

complaints, recruiting, payroll services, dissemination of personnel forms, and maintenance of personnel files.

27. Employees at Landry's Seafood House restaurants receive employee handbooks, personnel policies, and employment forms that specifically refer to Landry's, LLC or Fertitta.

## ADMINISTRATIVE PROCEDURES

28. More than 30 days prior to the institution of this lawsuit, Torabi filed a charge of discrimination with the EEOC alleging violations of Title VII by Landry's Seafood House.

29. The EEOC provided Landry's Seafood House with notice of the charge of discrimination.

30. The EEOC investigated the charge of discrimination and Defendants participated in the investigation.

31. On February 22, 2023, the EEOC issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated.

32. The EEOC's determination included an invitation for Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

33. The EEOC and Defendants were unable to reach an agreement through the conciliation process.

34. On June 26, 2023, the EEOC issued a Notice of Failure of Conciliation to Defendants advising them that the agency was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

35. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **GENERAL ALLEGATIONS**

36. At all relevant times, Defendants owned or operated the Landry's Seafood House located at 7209 S. Clinton, Englewood, Colorado 80112.

37. On or about May 31, 2017, Defendants hired Torabi to work as a server at the Englewood restaurant.

38. Torabi's country of origin is Iran, and she is Iranian.

39. Bartenders/Managers Juan Mendoza and Chris Cadwell regularly and openly harassed Torabi because of her national origin, Iranian.[1]

40. Mendoza and Cadwell's national origin harassment included, but was not limited to:

    a. Mocking Torabi's accent nearly every shift;

    b. Parroting back, in a mocking tone, Torabi's orders when she placed them at the bar;

    c. Mocking Torabi's accent openly in front of other Landry's employees and customers;

    d. Refusing to fill bar orders placed by Torabi or delaying these orders, which negatively impacted Torabi's tips;

    e. Assigning Torabi additional or more difficult work than non-Iranian servers;

    f. Assigning Torabi less desirable sections of tables in the restaurant than non-Iranian servers;

    g. Not assigning Torabi a new table when it was her turn in the rotation of servers; and

    h. Cutting Torabi's shifts early.

41. Cadwell openly commented on Torabi's body hair in front of other employees.

---

[1] It is unclear from Defendants' documents whether Cadwell's last name is spelled "Cadwell" or "Caldwell." He will be referred to as "Cadwell" in this complaint.

42. On one occasion, Cadwell told Torabi: "Tuck your shirt in, nobody wants to see your hairy back."

43. Cadwell also told Torabi that her body was "gross."

44. When he was supervising her, Mendoza made Torabi do extra work before he would allow her to take her tips. For example, servers were required to make up ten place settings prior to receiving a supervisor's sign off on tips. When Mendoza was supervising, he made Torabi do an additional ten place settings before he would sign off on her tips.

45. When he was supervising her, Cadwell made Torabi do extra work like rolling more silverware than other servers or more difficult work, such as cleaning machinery or combining sauces.

46. Torabi complained multiple times to General Manager Jeffrey Carter and told Carter she was experiencing discrimination because of her national origin.

47. Torabi told Carter that Mendoza and Cadwell openly mocked her accent and treated her differently than other servers because she was from Iran.

48. Carter was dismissive of Torabi's complaints about the national origin harassment, telling her to "shut up" or that the bartenders were just "teasing because they like you."

49. Carter took no actions to address the national origin harassment reported by Torabi.

50. Instead, in retaliation for Torabi complaining about national origin discrimination, Carter would assign her more difficult and longer side duties, such as cleaning machinery or combining sauces.

51. Carter and Regional Director Christine Frawley also assigned Torabi less tables than other non-Iranian servers, would skip Torabi when it was her turn in a rotation of servers to receive a new table, and would assign less desirable tables to Torabi than they would to other non-Iranian servers.

52. This unequal and retaliatory treatment negatively impacted Torabi's pay and ability to earn tips.

53. On or around June 19, 2019, Torabi escalated her complaints about the harassment and discrimination to Defendants' Human Resources ("HR") department and spoke to HR Representative Julie Daniels.

54. Torabi complained to Daniels about her hostile work environment based on her national origin, including the frequent and open mocking of her accent, Cadwell's comment about her body and "hairy back," Cadwell and Mendoza's treatment of her when she placed orders, her shifts being cut early by Mendoza without explanation, and the assignment of extra work to her and not to other servers.

55. After Torabi's complaint to HR, Cadwell received a written "Coach and Counsel" about his "hairy back" comment. Mendoza later received a written warning about unprofessional behavior.

56. Cadwell and Mendoza's harassment of Torabi based on her national origin nevertheless continued.

57. Cadwell and Mendoza, informed of the complaints against them, also retaliated against Torabi because of her complaints to HR.

58. Cadwell and Mendoza's national origin harassment and retaliation against Torabi included: continuing to refuse to fill bar orders placed by Torabi or delaying these orders,

8

assigning Torabi additional or more difficult work, assigning Torabi less desirable sections of tables in the restaurant, not assigning Torabi a new table when it was her turn in the rotation of servers, and cutting Torabi's shifts early.

59. During a shift after her June HR complaint, Mendoza took a table from Torabi even though it was in her section. He gave the table to another server and told the other server, "Don't be scared of Shadi, take the table."

60. After Torabi's June 2019 complaint, Carter would ignore Torabi and assign her fewer tables.

61. On or around July 21, 2019, Carter issued Torabi a written Disciplinary Action Report for not asking a customer if they were a Landry's Select Club Member, even though Torabi had never been informed of the new policy requiring her to do so.

62. This disciplinary action occurred after Carter had been ignoring Torabi after she complained to HR in June 2019.

63. On or around July 22, 2019, Torabi again complained to HR about the retaliation and spoke with HR Representative Heather Barker.

64. Torabi complained to Barker that she believed management was retaliating against her for complaining to HR. She also told Barker that she believed management was trying to get her fired.

65. One month after Torabi complained to Barker, on August 22, 2019, Defendants discharged Torabi for an alleged violation of Defendants' Substance Abuse Policy.

66. On August 22, 2019, Torabi came to the restaurant around 1:00 pm to have lunch with a cousin and a friend. Torabi was scheduled to work at 5:30 pm later that day.

9

67. At lunch, Torabi's friend had an alcoholic beverage while Torabi had water. Torabi's friend thought her alcoholic beverage tasted strange and requested Torabi take a sip.

68. Torabi took a small sip of the beverage, which was witnessed by Regional Director Frawley.

69. When Torabi came into work that evening, Frawley and Carter called her into the office and terminated her employment for allegedly violating Defendants' Substance Abuse Policy.

70. Defendants' employee handbook, however, states that before an employee is subject to discipline for an alleged violation of the Substance Abuse Policy, the violation must be determined "by an authorized search and/or testing procedure."

71. Defendants did not attempt to administer a breathalyzer test or other procedure to Torabi.

72. The same day she was discharged, Torabi contacted the Arapahoe Sheriff's Office and had a breathalyzer test, administered by Deputy Kylor Dossett.

73. The test showed that Ms. Torabi's Blood Alcohol Concentration was zero.

74. While Torabi worked at the Englewood Landry's restaurant, other employees showed up to work intoxicated, drank alcohol on the job, or drank alcohol before or after their shifts and Carter did nothing about it.

## STATEMENT OF CLAIMS

75. Since at least 2018, Defendants have engaged in unlawful employment practices at the Landry's Seafood House in Englewood, Colorado, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

## **FIRST CLAIM FOR RELIEF**
**Harassment/Hostile Work Environment**
**(42 U.S.C. § 2000e-2(a)(1))**

76. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

77. Defendants discriminated against Torabi in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by harassing her and creating a hostile work environment because of her national origin, Iranian.

78. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Torabi.

79. As the General Manager, the actions of Carter constitute the actions of Defendants for which they are liable.

80. As Managers, the actions of Mendoza and Cadwell constitute the actions of Defendants for which they are liable.

81. Defendants failed to take reasonable measures to prevent and promptly correct discriminatory or harassing behavior in the workplace.

82. Defendants knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by Torabi because of her national origin, Iranian.

83. Torabi repeatedly complained to management and HR about the hostile or offensive work environment, but Defendants negligently failed to take timely preventative or remedial actions.

84. The effect of the practices complained of above has been to deprive Torabi of equal employment opportunities and otherwise adversely affected her status as an employee because of her national origin.

85. The unlawful employment practices complained of above were intentional.

86. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Torabi.

## SECOND CLAIM FOR RELIEF
### Retaliation
### (42 U.S.C. § 2000e-3(a))

87. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

88. Defendants unlawfully retaliated against Torabi in violation of 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against her for opposing and complaining about unlawful employment practices, including national origin harassment.

89. Torabi suffered adverse terms and conditions of employment, retaliatory harassment, retaliatory discipline, and retaliatory discharge because she engaged in protected activity by opposing and complaining about discrimination and harassment.

90. The effect of the practices complained of above has been to deprive Torabi of equal employment opportunities and otherwise adversely affect her status as an employee because she opposed and complained about unlawful employment practices.

91. The unlawful retaliatory employment practices complained of above were intentional.

92. The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Torabi.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of national origin and from retaliating against employees who oppose unlawful employment practices.

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees of diverse national origins and for individuals who oppose unlawful employment practices, and which eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendants to make whole Torabi, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to lost wages, benefits, and compensation for all monetary losses of Torabi.

D.      Order Defendants to make whole Torabi by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain and suffering, in amounts to be determined at trial.

E.      Order Defendants to pay Torabi punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

F.      Grant such further relief as the Court deems necessary and proper in the public interest.

G.      Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

    Gwendolyn Young Reams
    Acting General Counsel

    Christopher Lage
    Deputy General Counsel

    Mary Jo O'Neill
    Regional Attorney
    Phoenix District Office

    Laurie Jaeckel
    Assistant Regional Attorney

    *s/ Lauren Duke*
    Lauren Duke
    Megan K. O'Byrne
    Trial Attorney
    EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
    950 17th Street, Suite 300
    Denver, CO 80202
    lauren.duke@eeoc.gov
    megan.obyrne@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.